No. 12-16373

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

―――――――――――

In re: APPLICATION FOR EXEMPTION FROM ELECTRONIC PUBLIC
ACCESS FEES BY JENNIFER GOLLAN AND SHANE SHIFFLETT

―――――――――――

JENNIFER GOLLAN and SHANE SHIFFLETT,
Applicants - Appellants.

―――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

―――――――――――

**BRIEF FOR THE ADMINISTRATIVE OFFICE OF
UNITED STATES COURTS AS AMICUS CURIAE**

―――――――――――

ROBERT K. LOESCHE
*General Counsel*

SIGMUND ADAMS
*Attorney*

*Administrative Office of
United States Courts
Washington, D.C. 20544*

STUART F. DELERY
*Principal Deputy Assistant
Attorney General*

MELINDA L. HAAG
*United States Attorney*

MATTHEW M. COLLETTE
H. THOMAS BYRON III
*(202) 616-5367
Attorneys, Appellate Staff
Civil Division, Room 7260
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530*

# TABLE OF CONTENTS

INTEREST OF THE AMICUS CURIAE ................................................................1

JURISDICTIONAL STATEMENT.......................................................................3

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................4

STATEMENT OF THE CASE ..............................................................................4

STATEMENT OF FACTS ....................................................................................5

SUMMARY OF ARGUMENT .............................................................................9

ARGUMENT ......................................................................................................11

    I.     This Court Lacks Appellate Jurisdiction............................................11

    II.    The All Writs Act Does Not Provide Jurisdiction............................18

    III.   The District Court's Denial Of An Exemption Is
           Consistent With The Judicial Conference Policy .............................20

CONCLUSION ...................................................................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**

*Aref* v. *United States*, 452 F.3d 202 (2d Cir. 2006)......................................... 19-20

*In re Baker*, 693 F.2d 925 (9th Cir. 1982) ....................................................... 14, 16

*Bense* v. *Starling*, 719 F.2d 241 (7th Cir. 1983) ....................................................13

*Cheney* v. *U.S. Dist. Court*, 542 U.S. 367 (2004) ...................................................19

*Clinton* v. *Goldsmith*, 526 U.S. 529 (1999) ............................................................18

*Ellis* v. *Dyson*, 421 U.S. 426 (1975).........................................................................12

*Jackson* v. *Vasquez*, 1 F.3d 885 (9th Cir. 1993) ....................................................19

*Kokkonen* v. *Guardian Life Ins. Co.*, 511 U.S. 375 (1994)......................................11

*Landano* v. *Rufferty*, 859 F.2d 301 (3d Cir. 1988) .................................................15

*Liverpool S.S. Co.* v. *Commissioners of Emigration*, 113 U.S. 33 (1885) ..............12

*Roche* v. *Evaporated Milk Ass'n*, 319 U.S. 21 (1943) ............................................19

*Taiwan* v. *U.S. Dist. Court*, 128 F.3d 712 (9th Cir. 1997) ............................. 18-19

*United States* v. *Deluca*, 912 F.2d 183 (7th Cir. 1990) ........................................15

*United States* v. *French*, 556 F.3d 1091 (10th Cir. 2009) ....................................15

*United States* v. *Bloomer*, 150 F.3d 146 (2d Cir. 1998) ........................................15

*Valley Forge Christian College* v. *Americans United for Separation of Church & State*, 454 U.S. 464 (1982).................................................................12

*Zied-Campbell* v. *Richman*, 317 Fed. Appx. 247 (3d Cir.), cert. denied, 130 S. Ct. 290 (2009) ........................................................................17

**Statutes:**

28 U.S.C. § 604 ........................................................................................2
28 U.S.C. § 1291 ................................................................. 3, 10, 11, 14
28 U.S.C. § 1295 ...................................................................................3
28 U.S.C. § 1331 ...................................................................................3
28 U.S.C. § 1914 ...................................................................................8

All Writs Act:

   28 U.S.C. § 1651(a) .................................................................. 10, 18

Fiscal Year 1992 Appropriations Act for the Judiciary, Pub. L. No. 102-140, § 303, reprinted at 28 U.S.C. § 1913, Note ................... 2, 16, 25-26

**Rules:**

  Fed. R. Civ. P. 3 .............................................................................. 12-13

**Other:**

Administrative Office of United States Courts, Electronic Public Access Program Summary (Dec. 2012) ............................................. 6, 21, 22

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

No. 12-16373
_____

In re: APPLICATION FOR EXEMPTION FROM ELECTRONIC PUBLIC
ACCESS FEES BY JENNIFER GOLLAN AND SHANE SHIFFLETT

_____

JENNIFER GOLLAN and SHANE SHIFFLETT,
Applicants - Appellants.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____

**BRIEF FOR THE ADMINISTRATIVE OFFICE OF
UNITED STATES COURTS AS AMICUS CURIAE**

_____

**INTEREST OF AMICUS CURIAE**

The Administrative Office of United States Courts (AO) submits this

brief as amicus curiae in response to the Court's invitation.  The AO is the

central support entity for the Judicial Branch. It provides a wide range of

administrative, legal, financial, management, program, and information

technology services to the federal courts.  The AO also provides support

and staff counsel to the Judicial Conference of the United States and its

committees, and implements and executes Judicial Conference policies, as well as applicable federal statutes and regulations. The Judicial Conference of the United States supervises the Director of the AO in the performance of his duties as the administrative officer of the courts of the United States under 28 U.S.C. § 604. In addition, the Judicial Conference acts pursuant to statutory authority in a variety of specific areas dealing with the administration of the courts, and promulgates administrative policies such as the one at issue here.

This proceeding concerns the interpretation, application, and reviewability of the Electronic Public Access Fee Schedule, a list of fees payable by users of the federal judiciary's electronic case record system. The Judicial Conference adopted that fee schedule pursuant to authority granted by Congress in the Fiscal Year 1992 Appropriations Act for the Judiciary, directing the Judicial Conference to "prescribe reasonable fees, * * * for collection by the courts * * * for access to information available through automatic data processing equipment." Pub. L. No. 102-140, § 303), reprinted at 28 U.S.C. § 1913, Note. The fee schedule and

accompanying policy notes were adopted by the Judicial Conference after consideration by the Committee on Court Administration and Case Management (CACM), supported by the AO.

## JURISDICTIONAL STATEMENT

Jennifer Gollan and Shane Shifflett applied to the district court, seeking an exemption from otherwise applicable fees for electronic access to court records through PACER (Public Access to Court Electronic Records). Their exemption application did not identify any statute that confers judicial jurisdiction on federal courts for the resolution of disputes concerning such fees; their opening brief in this Court (at 1) asserts that the district court had jurisdiction pursuant to 28 U.S.C. § 1331. The district court denied the exemption on May 16, 2012. Gollan and Shifflett filed a notice of appeal on June 12, 2012. Their opening brief invokes this Court's jurisdiction under 28 U.S.C. § 1295. See Gollan Br. 1.[1] As discussed below,

---

[1] The cited statute specifies the jurisdiction of the United States Court of Appeals for the Federal Circuit. Gollan and Shifflett may have intended to cite to 28 U.S.C. § 1291, which provides for appellate jurisdiction over final decisions of district courts. See Gollan Br. 1 (characterizing denial of

*Continued on next page.*

this Court lacks jurisdiction over this appeal, and also would lack jurisdiction if the notice of appeal were treated as a petition for a writ of mandamus.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

**1.** Whether this Court has jurisdiction over an appeal from an order denying an application for exemption from PACER fees.

**2.** Whether the notice of appeal should be treated as a petition for a writ of mandamus.

**3.** Whether the fee-exemption application was properly denied under the applicable Judicial Conference policy.

## STATEMENT OF THE CASE

Gollan and Shifflett seek appellate review of a decision by Chief Judge James Ware, denying their application for an exemption from the fees applicable to users of the PACER system. Judge Ware's ex parte decision was not issued in conjunction with any docketed case before the

---

fee exemption application as "a final decision as to the rights of Applicants-Appellants Jennifer Gollan and Shane Shifflett").

4

district court, and no adverse party has been named in this Court or the district court.

## STATEMENT OF FACTS

**1.**     PACER is an internet-based service that provides users with access to dockets, reports, and filings in trial and appellate cases in federal courts throughout the United States.  It is linked with, and integral to, the courts' electronic case management and filing system.  Dockets and documents filed in all cases since the onset of electronic filing are available for public access through the PACER system.

The Judicial Conference establishes fees for PACER access pursuant to statutory authority.  There is no fee for registration to use the system. The fee schedule charges ten cents per page viewed, with a per-document maximum of 30 pages (unformatted web data is charged at a per-page equivalent).[2]   Users may save or print any documents retrieved from the system without incurring any additional PACER fees.

---

[2] The fee schedule in place at the time of Judge Ware's denial of the exemption application here, which was effective April 1, 2012, is appended to this brief (Add. A1-A2).  The Judicial Conference subsequently adopted

*Continued on next page.*

Most PACER users pay nothing for access to the system of judicial records: Court opinions are available free of charge. There is no charge for litigants (through their counsel or pro se) to receive a copy of any document filed and served in cases to which they are a party. And the vast majority of PACER users – those generating a relatively small volume of usage per month – are not charged at all.[3] Moreover, every federal courthouse has public terminals available for users to search and view information without charge. And the policy includes a mechanism for courts to grant exemptions from the fee requirement, based on demonstrated need, for certain users, as discussed below. See Electronic Public Access Program Summary 8-10 (Dec. 2012) (Add. A10-A12).[4] The Judicial Conference plans to revisit the PACER fee policy later this year, and expects to clarify the exemption requirements.

---

a revised schedule, effective October 1, 2012, which raised fees for name searches and returned checks, but otherwise left the fee schedule and policy notes unchanged.

[3] Users with $15 or less in monthly charges owe nothing.

[4] The Program Summary, a report published by the AO, available at http://www.pacer.gov/psc/qresources.html, is appended to this brief.

**2.** Jennifer Gollan and Shane Shifflett are reporters employed by the Center for Investigative Reporting ("CIR"), a media organization with nonprofit status under section 501(c)(3) of the Internal Revenue Code. Gollan and Shifflett submitted a petition for exemption from the fee schedule for access to electronic judicial records of cases on PACER. Their application stated that they sought the exemption in order to conduct research "analyzing the effectiveness of the court's conflict-checking software and hardware used by the California federal courts to help federal judges identify situations requiring their recusal." ER 17; see also ER 47. They proposed to "cross reference court records available through PACER against separate data sets, such as judges' statements of economic interest"; they would "harvest[] dockets from PACER and analyz[e] their grammatical patterns" in order to "classify documents and search them for context." *Ibid.*

Gollan and Shifflett anticipated that the cost of PACER fees would be "many thousands of dollars," although the application did not elaborate on that estimate or explain the basis for calculating the total amount of fees

7

that would otherwise apply. *Ibid.* They asserted, again without explanation, that the expense of PACER fees "is prohibitive," and explained only that CIR's "funding is both limited and wholly dependent on foundation grants and donations." *Ibid.* The application concluded that, without an exemption from fees, CIR would "not be able to access the federal court records necessary to complete this study." *Ibid.*

**3.** The district court initially granted the application on the basis of Gollan and Shifflett's representation that their employer (initially, CIR's predecessor, The Bay Citizen) was a 501(c)(3) organization. Several weeks later, however, the court suspended its order, invited Gollan and Shifflett to file a renewed fee-exemption application, and set a show-cause hearing to address whether they were entitled to a fee exemption.

Chief Judge Ware denied the application, concluding that "the Court does not find good cause to grant Gollan and Shifflett an exemption from payment of electronic public access fees." ER 12. The order relied on the statement in the Judicial Conference Policy Notes to 28 U.S.C. § 1914, which the judge interpreted to "expressly state that courts should not grant

such exemptions to 'members of the media.'"  *Ibid*.; see also ER 12-13 (relying on the "Judicial Conference policy precluding the granting of such exemptions to members of the media" as a basis for finding "that it would be inappropriate to grant Gollan and Shifflett an exemption").  The order noted that Gollan and Shifflett had argued that the Judicial Conference Policy Notes should be read not to apply to members of the media who are part of section 501(c)(3) non-profit organizations, but the judge concluded that there was no authority in support of that argument and declined to adopt it.  ER 13.

Gollan and Shifflett filed a notice of appeal, seeking review of the denial of their fee-exemption application.  After their opening brief was filed, this Court issued an order inviting the Department of Justice to appear on behalf of the Administrative Office of United States Courts or the Judicial Conference as amicus curiae or as an intervenor in the appeal.

## SUMMARY OF ARGUMENT

This Court lacks jurisdiction to review the fee-exemption denial, which was an administrative – not a judicial – order by Judge Ware.  An

application for exemption from PACER fees is not an adversarial case or controversy within the Article III jurisdiction of the federal courts. And the resulting determination was thus not a final decision within the scope of 28 U.S.C. § 1291.

Nor can this case be considered under this Court's mandamus jurisdiction. Because a court's authority to issue writs of mandamus is limited to proceedings in aid of its jurisdiction, as specified in the All Writs Act, 28 U.S.C. § 1651(a), treating the notice of appeal here as a petition for a writ of mandamus would not create jurisdiction where there is no independent basis for jurisdiction.

Even if there were appellate jurisdiction here, this Court would be bound to reject the arguments made by Golan and Shifflett. Judge Ware's denial of the fee-exemption application was proper under the Judicial Conference policy on PACER fees. That policy identifies groups that may be unable to pay the fees – such as legal aid and non-profit organizations – but it does not confer categorical exemptions for those groups. Likewise, the policy identifies large-volume users – such as attorneys and media

organizations – who presumptively can and should pay for access to case data, although the policy does not categorically prohibit an exemption for such users.

The policy requires every applicant to demonstrate that payment of the fees would pose an unreasonable burden.  Gollan and Shifflett failed to do so here, and that failure warranted the denial of their application.

## ARGUMENT

### I.    THIS COURT LACKS APPELLATE JURISDICTION.

**A.**    "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen* v. *Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  This is not a case or controversy within the constitutional grant of Article III power, and the order issued by Judge Ware was not a judicial "decision" within the meaning of 28 U.S.C. § 1291.  Although the application was denied by a district judge, that determination was made in an administrative, rather than a judicial capacity.   Because that

determination was not an exercise of judicial power, there is no appellate jurisdiction to review the denial.

The Supreme Court has consistently held that the judicial power of federal courts is limited to cases or controversies, and has focused on the adversarial nature of disputes properly within the judiciary's constitutional power. "The constitutional power of federal courts cannot be defined, and indeed has no substance, without reference to the necessity 'to adjudge the legal rights of litigants in actual controversies.'" *Valley Forge Christian College* v. *Americans United for Separation of Church & State*, 454 U.S. 464, 471 (1982) (quoting *Liverpool S.S. Co.* v. *Commissioners of Emigration*, 113 U.S. 33, 39 (1885)). "[I]t is elemental that there must be parties before there is a case or controversy." *Ellis* v. *Dyson*, 421 U.S. 426, 434 (1975).

Here, there are no parties, there is no dispute or lawsuit, and there is therefore no case or controversy. Gollan and Shifflett did not invoke the judicial power of the district court by initiating litigation. They filed neither a complaint nor any other petition seeking relief from the court in a judicial capacity. See Fed. R. Civ. P. 3 ("A civil action is commenced by

filing a complaint with the court.").  And they never identified any entity as a defendant or respondent that violated a putative right that they sought to vindicate in district court.  Indeed, there would be no adverse party to appeal from an order granting an exemption.  The application seeking a waiver of fee-payment requirements came before Judge Ware in his administrative capacity, and his denial of that application was not a court order subject to appellate review.

**B.**    This Court and other circuits have held that appeals may not be taken from administrative decisions, and the reasoning of those cases applies to the administrative decision in this case as well.  Thus, the Seventh Circuit has held that no appeal is available from a denial of an attorney's motion seeking leave to appear pro hac vice without local counsel.  *Bense* v. *Starling*, 719 F.2d 241 (7th Cir. 1983).  Where no complaint had been filed, and there was no dispute between adversary parties, the court of appeals held there was no case or controversy within the judicial power of the courts, and therefore no basis for an appeal.  The attorney's motion "was *not an adversary matter*," the court explained:  "No notice was

given to anyone. There was no hearing. There was not, and could not be, any opposition to the motion because there were no 'parties' before the Court." *Id.* at 244.

Similarly, this Court and others have recognized that there is no appellate jurisdiction to review a decision by a district judge denying payment of additional fees to counsel under the Criminal Justice Act (CJA). Because such a decision is an example of "administrative actions of the district judge that are essentially outside the scope of the litigative function," this Court held that it is not a "final decision[] of a judicial character," and thus is not appealable under § 1291. *In re Baker*, 693 F.2d 925, 926-927 (9th Cir. 1982) ("We agree that the district court's order is "final" with regard to Baker's fees, but we cannot regard it as a "decision" of the district court within the meaning of 28 U.S.C. § 1291."). The Court emphasized the "nonadversarial procedures established by the CJA" in concluding that "the district judge's certification of attorneys' fees is an administrative act, and is consequently not one of the "final decisions" rendered appealable by 28 U.S.C. § 1291." *Id.* at 927 (citations omitted).

Other circuits agree.  See, *e.g.*, *United States* v. *French*, 556 F.3d 1091, 1093 (10th Cir. 2009) (citing cases).

In addition, multiple circuits have held that there is no appellate jurisdiction over a decision by a district judge denying retroactive appointment of counsel under the CJA.  The Seventh Circuit has held that the CJA authorizes such appointments based on "non-adversarial procedures" which render the decision "an administrative act and * * * consequently not one of the final decisions rendered appealable by Section 1291."  *United States* v. *Deluca*, 912 F.2d 183, 183-184 (7th Cir. 1990) (citing *Landano* v. *Rufferty*, 859 F.2d 301, 302 (3d Cir. 1988) (per curiam)).  Likewise, the Second Circuit has held that it lacks jurisdiction over an appeal from an order denying retroactive appointment of counsel and payment of expert fees under the CJA.  *United States* v. *Bloomer*, 150 F.3d 146, 148 (2d Cir. 1998) ("fee determinations concerning services already rendered are administrative, rather than judicial, determinations").  Because such requests "are *ex parte* and nonadversarial," such "purely administrative decisions of the district court are not appealable final orders."  *Ibid.*

15

Courts have also recognized that legislative intent concerning the availability of appellate review can inform the jurisdictional determination. Here, there is no indication that Congress intended to provide appellate review of an order granting or denying a PACER fee-exemption application. The statute requiring the Judicial Conference to adopt a fee schedule provides that the fee provisions "shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information." Pub. L. No. 102-140, § 303(a), reprinted at 28 U.S.C. § 1913, Note. But it does not specify that disputes over such exemptions should be resolved judicially rather than administratively, nor does it suggest that any order denying an exemption should be reviewable on appeal. The similar absence of any indication in the CJA authorizing appellate review has led courts to dismiss putative appeals of administrative decisions under that statute. See, *e.g.*, *Baker*, 694 F.2d at 926 ("Except for the limited administrative review of the district court's certification by the chief judge of the circuit, the CJA makes

16

no provision for appeal of an order for payment of attorneys' fees, and its legislative history provides no suggestion that one was intended.").

**C.**     We are not aware of any case directly on point that addresses whether a denial of an application for exemption from PACER fees, apart from a litigant's effort to obtain access to court records for the purpose of pending litigation, is reviewable on appeal.  The Third Circuit has held that the denial of a plaintiff's motion for waiver of PACER fees was appealable as a collateral order, but the court did not address whether such a waiver was a judicial or administrative matter.  See *Zied-Campbell* v. *Richman*, 317 Fed. Appx. 247 (3d Cir.), cert. denied, 130 S. Ct. 290 (2009).   In that case, however, the plaintiff sought the exemption in the context of ongoing litigation to which she was a party, and she specifically sought access to documents in her own case.  Thus, the court in *Zied-Campbell* was acting in a judicial capacity, and its decision does not contradict the line of authority making clear that an administrative, non-judicial decision is not appealable under § 1291  Notably, Gollan and Shifflett do not seek access to PACER in order to preserve their ability to pursue their own pending litigation

17

against other parties.  This Court therefore need not decide whether a denial of a fee-exemption application in those circumstances would be a judicial or administrative decision.

## II.    THE ALL WRITS ACT DOES NOT PROVIDE JURISDICTION.

Gollan and Shifflett cannot overcome the lack of appellate jurisdiction by seeking a writ of mandamus.  Such a writ would be available, if at all, under the All Writs Act, which provides:  "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate *in aid of their respective jurisdictions* and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a) (emphasis added). The All Writs Act, which codifies the common-law authority to issue writs of mandamus, does not itself create appellate jurisdiction: "the express terms of the Act confine the power of the [court of appeals] to issuing process 'in aid of' its existing statutory jurisdiction; the Act does not enlarge that jurisdiction."  *Clinton* v. *Goldsmith*, 526 U.S. 529, 534-535 (1999). This Court has similarly recognized that limitation.  See *Taiwan* v. *U.S. Dist. Court*, 128 F.3d 712, 717 (9th Cir. 1997) ("we cannot issue a writ under the

Act 'unless it is designed to preserve jurisdiction that the court has acquired from some other independent source in law'") (quoting *Jackson* v. *Vasquez*, 1 F.3d 885, 889 (9th Cir. 1993)).

Thus, "[t]he traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine [the court against which mandamus is sought] to a lawful exercise of its prescribed jurisdiction." *Cheney* v. *U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (quoting *Roche* v. *Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943). Mandamus is not available to seek review of a non-judicial action that would not be reviewable by appeal. Because a district judge granting or denying an application for waiver of PACER fees is acting in an administrative capacity, not a judicial one, there is no exercise of jurisdiction by a district court that would be a proper subject of mandamus.

The case law supports this interpretation. For example, the Second Circuit has held that it lacked jurisdiction to hear a mandamus petition that sought relief against the United States, rather than review of a district court action. *Aref* v. *United States*, 452 F.3d 202, 205-206 (2d Cir. 2006)

("Accordingly, this Court may not issue writs except those which aid our jurisdiction – which is appellate in nature."). Such an effort to compel the Executive's conduct by a writ of mandamus failed in part because the courts lacked any basis for appellate jurisdiction over non-judicial actions. The same rationale precludes mandamus here.

### III. THE DISTRICT COURT'S DENIAL OF AN EXEMPTION IS CONSISTENT WITH THE JUDICIAL CONFERENCE POLICY.

Although this Court lacks jurisdiction over this putative appeal, and there is no basis for mandamus, we nevertheless address the merits of Gollan's and Shifflett's arguments. The policies underlying the fee schedule and the Judicial Conference guidance concerning fee-exemption applications demonstrate that denial of the application here was proper.

Moreover, the fee-exemption policy will be reviewed by the Judicial Conference in coming months. That review is likely to result in a revision of the Policy Notes accompanying the fee schedule in order to clarify the purpose and intent of the policy. Such a revision should help to eliminate confusion about the availability of exemptions.

**A.** Congress has not appropriated funds for the operation of PACER or the judiciary's other electronic access programs. Instead, those programs are intended to be self-sustaining and supported by user fees. See Electronic Public Access Program Summary 1 (Dec. 2012) (Add. A3). The Judicial Conference policy governing fee exemptions is an integral part of the self-funding system of electronic public access to court records that includes the PACER system, the electronic filing system, and court websites. The vast majority of individuals and entities who use those systems pay nothing for access to judicial records: Counsel for litigants are not charged for electronic filing or service of documents in active cases. Court websites, which frequently include opinions, rules, and other information, are available to the public without charge. Documents are available for viewing free of charge at public terminals located in each courthouse. And PACER fees are waived for any user who accumulates no more than $15 in fees per quarter; approximately 65-75% of all PACER users pay nothing because of that limitation. See Program Summary 9 (Add. A11).

As a consequence of the waiver policy for users under the monthly threshold, the judiciary's system of public access is funded primarily by larger-volume users. *Ibid.* In order for PACER to be self-sustaining, and to generate sufficient funds to support the judiciary's other electronic public access programs, exemptions must be strictly limited, and should not excuse payment from high-volume users who have not demonstrated that they cannot afford to pay for the services they use.

Gollan and Shifflett argue (Br. 17 n.5) that PACER fees generate more funds than is required to operate the PACER system. But those fees are also used – as directed by Congress – to provide all electronic access to court records, including through the electronic filing system, court web sites, and RSS feeds. Those funds also support free public dissemination of other information from the courts, such as victim notification, on-line juror services, and courtroom technology programs. See Program Summary 1 (Add. A3). Thus, as Congress contemplated, PACER fees must generate a sufficient revenue stream to cover additional programs beyond just the PACER system itself.

Nor does a stringent application of the waiver requirement unduly burden researchers. Before the advent of the PACER system, there was no central nationwide repository for federal court records. The Judiciary created such a system without the use of taxpayer funds, and can reasonably require payment from those who seek to use the system in order to ensure it remains viable.

**B.** The fee schedule provides that "courts may, upon a showing of cause, exempt indigents, bankruptcy case trustees, individual researchers associated with educational institutions, courts, section 501(c)(3) not-for-profit organizations, court appointed pro bono attorneys, and pro bono ADR neutrals from payment of these fees." Electronic Public Access Fee Schedule, sec. I (4/1/12) (Add. A1). Before granting an exemption, the court "must find that parties from the classes of persons or entities listed above seeking exemption have demonstrated that an exemption is necessary in order to avoid unreasonable burdens and to promote public access to information." *Ibid.* A policy note explains that "[c]ourts should not exempt local, state or federal government agencies, members of the media,

23

attorneys or others not members of one of the groups listed above," and emphasizes that "[e]xemptions should be granted as the exception, not the rule." *Id.*, Judicial Conference Policy Notes (Add. A2).

Thus, a court considering a fee-exemption application should first consider whether the applicant is able to pay the fees or whether payment would create "unreasonable burdens," in the language of the policy and the underlying statute. The list of groups potentially eligible for fee waivers – including indigents, bankruptcy case trustees, not-for-profit organizations, and others – does not establish a categorical entitlement to exemption, but is only intended to represent examples of the kinds of applicants likely able to meet such a standard. In any specific application, however, a member of such a group must make an individualized showing of need and hardship.

Conversely, the policy note identifies groups that generally represent larger-volume users who likely can afford to pay the fees, such as government agencies, media representatives, and attorneys. Like the list of those potentially eligible, the notes identifying those generally ill-suited to

an exemption is neither exclusive nor categorical.  Just as the fee schedule does not require exemptions to be granted for those in the first list, it does not prohibit such exemptions for those on the second.

**C.**    Gollan and Shifflett argue that the district judge improperly denied their application solely on the basis that they are members of the media, and they contend that they should be entitled to an exemption on the ground that they are employed by a not-for-profit media organization. Those arguments misread both the order denying the application and the judicial policy establishing the narrow grounds on which a district judge may grant such exemptions in the exercise of his or her discretion.  They also overlook the fundamental threshold requirement for any exemption: the showing that fee payment would pose an unreasonable burden.

A fee-exemption application must demonstrate that an exemption is necessary to avoid an unreasonable burden that would result from being required to pay the fees.  See Electronic Public Access Fee Schedule, sec. I (requiring "a showing of cause") (Add. A1); Pub. L. No. 102-140, § 303 (directing Judicial Conference to establish a fee schedule that "shall

provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information"). Gollan and Shifflett's application failed to satisfy, or even to address, that threshold requirement. In the absence of a demonstrated need, supported by analysis of both the anticipated costs and the resources available to the applicant, there is no basis for granting an exemption. Here, Gollan and Shifflett failed to supply any detailed information addressing either the amount of fees they expected their investigation to incur or their ability to pay those fees. On the basis of that failure, denial of the application was appropriate, even if the district court did not articulate that basis for the denial.

**D.** To be sure, the Judicial Conference policy is not as clear as it could be, and the ambiguity of the policy may have contributed to the misunderstandings reflected in the arguments Gollan and Shifflett make in their opening brief. The AO has previously identified the PACER fee exemption policy as needing clarification, and the Judicial Conference has thus already planned to reconsider the policy. That reconsideration is

expected to take place this year; we will inform the Court when it is complete.  Even before then, however, Gollan and Shifflett may re-apply for an exemption if they provide more detailed information that would satisfy the fundamental requirement that an exemption is necessary to avoid an unreasonable burden.

## CONCLUSION

The appeal should be dismissed for lack of jurisdiction.

Respectfully submitted,

STUART F. DELERY
  *Principal Deputy Assistant*
  *Attorney General*

MELINDA L. HAAG
  *United States Attorney*

ROBERT K. LOESCHE
  *General Counsel*

SIGMUND ADAMS
  *Attorney*

  *Administrative Office of*
  *United States Courts*
  *Washington, D.C. 20544*

MATTHEW M. COLLETTE

 /s/ H. Thomas Byron III
H. THOMAS BYRON III
  *(202) 616-5367*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

JANUARY 2013

27

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Palatino Linotype, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,752 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

/s/ *H. Thomas Byron III*

H. THOMAS BYRON III

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2013, I electronically filed the foregoing Brief For The Administrative Office Of United States Courts As Amicus Curiae with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *H. Thomas Byron III*
H. THOMAS BYRON III

**ADDENDUM**

**ADDENDUM**
**TABLE OF CONTENTS**

Electronic Public Access Fee Schedule............................................................A1


Administrative Office of United States Courts, Electronic Public

    Access Program Summary (Dec. 2012) ......................................................A3

(Eff. 4/1/2012)

# ELECTRONIC PUBLIC ACCESS FEE SCHEDULE
### *(Issued in accordance with 28 U.S.C. § 1913, 1914, 1926, 1930, 1932)*

As directed by Congress, the Judicial Conference has determined that the following fees are necessary to reimburse expenses incurred by the judiciary in providing electronic public access to court records. These fees shall apply to the United States unless otherwise stated. No fees under this schedule shall be charged to federal agencies or programs which are funded from judiciary appropriations, including, but not limited to, agencies, organizations, and individuals providing services authorized by the Criminal Justice Act, 18 U.S.C. § 3006A, and bankruptcy administrator programs. Furthermore, the fee increase from eight cents per page to ten cents per page has been suspended for local, state, and federal government entities until 4/1/2015.

I.   For electronic access to court data via a federal judiciary Internet site: ten cents per page, with the total for any document, docket sheet, or case-specific report not to exceed the fee for thirty pages– provided however that transcripts of federal court proceedings shall not be subject to the thirty-page fee limit. For electronic access to an audio file of a court hearing via a federal judiciary Internet site: $2.40 per audio file. Attorneys of record and parties in a case (including *pro se* litigants) receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. No fee is owed under this provision until an account holder accrues charges of more than $15 in a quarterly billing cycle. Consistent with Judicial Conference policy, courts may, upon a showing of cause, exempt indigents, bankruptcy case trustees, individual researchers associated with educational institutions, courts, section 501(c)(3) not-for-profit organizations, court appointed pro bono attorneys, and pro bono ADR neutrals from payment of these fees. Courts must find that parties from the classes of persons or entities listed above seeking exemption have demonstrated that an exemption is necessary in order to avoid unreasonable burdens and to promote public access to information. For individual researchers, courts must also find that the defined research project is intended for academic research, and not for commercial purposes or internet redistribution. Any user granted an exemption agrees not to sell for profit the data obtained as a result. Any transfer of data obtained as the result of a fee exemption is prohibited unless expressly authorized by the court. Exemptions may be granted for a definite period of time and may be revoked at the discretion of the court granting the exemption.

II.   For printing copies of any record or document accessed electronically at a public terminal in the courthouse: ten cents per page. This fee shall apply to services rendered on behalf of the United States if the record requested is remotely available through electronic access.

III.   For every search of court records conducted by the PACER Service Center, $26 per name or item searched.

IV.   For the PACER Service Center to reproduce on paper any record pertaining to a PACER account, if this information is remotely available through electronic access, 50 cents per page.

V.   For a check paid to the PACER Service Center which is returned for lack of funds, $45.

**JUDICIAL CONFERENCE POLICY NOTES**

Courts should not exempt local, state or federal government agencies, members of the media, attorneys or others not members of one of the groups listed above. Exemptions should be granted as the exception, not the rule. A court may not use this exemption language to exempt all users. An exemption applies only to access related to the case or purpose for which it was given. The prohibition on transfer of information received without fee is not intended to bar a quote or reference to information received as a result of a fee exemption in a scholarly or other similar work.

The electronic public access fee applies to electronic court data viewed remotely from the public records of individual cases in the court, including filed documents and the docket sheet. Audio files of court hearings do not include naturalization ceremonies or appellate oral arguments. Electronic court data may be viewed free at public terminals at the courthouse and courts may provide other local court information at no cost. Examples of information that can be provided at no cost include: local rules, court forms, news items, court calendars, opinions, and other information – such as court hours, court location, telephone listings – determined locally to benefit the public and the court.

## Electronic Public Access Program Summary
December 2012

**Program Overview**

The Electronic Public Access program provides public access to court information through electronic means in accordance with federal statutes, Judiciary policies, and user needs. The Internet-based PACER (Public Access to Court Electronic Records) service provides courts, litigants, and the public with access to dockets, case reports, and over 500 million documents filed in federal courts through the Case Management and Electronic Case Files (CM/ECF) system. In other words, PACER is a portal to CM/ECF, which in turn, is integral to public access.

A PACER account is obtained by registering with the PACER Service Center, the Judiciary's centralized registration, user support and billing center. Registration information can be submitted via fax or the Internet, and there is no registration fee. At present, there are more than 1.4 million user accounts, with approximately 13,000 new accounts added each month. In fiscal year 2012 alone, PACER processed over 500 million requests for information.

As mandated by Congress, the public access program is funded entirely through user fees set by the Judicial Conference of the United States. The fees are published in the Electronic Public Access Fee Schedule, available on www.uscourts.gov and www.pacer.gov. Funds generated by PACER are used to pay the entire cost of the Judiciary's public access program, including telecommunications, replication, and archiving expenses, the Case Management/Electronic Case Files system, electronic bankruptcy noticing, Violent Crime Control Act Victim Notification, on-line juror services, and courtroom technology.

**Court Websites**

Each federal court uses its website, funded by fee revenue, to provide the public with access to information well beyond that which is required by the E-Government Act of 2002, such as court locations, contact information, local rules, standing or general orders, docket information, written opinions, and documents filed electronically. The courts are also using their websites to disclose information about judges' attendance at privately-funded seminars, orders issued on judicial conduct and disability complaints, and digital audio recordings of oral arguments heard by the court. Additionally, court websites provide general information concerning court operations, filing instructions, courthouse accessibility, interpreter services, job opportunities, jury information, and public announcements. Court websites are used to interact directly with the public through PACER, CM/ECF, on-line jury questionnaires, *pro se* filing tools, forms, and court calendars.

A3

**CM/ECF and the Next Generation**

Implementation of the federal Judiciary's Case Management/Electronic Case Files system (CM/ECF) began in 2001 in the bankruptcy courts after several years of pilot programs in bankruptcy and district courts. CM/ECF not only replaced the courts' old electronic docketing and case management systems, but it also enabled courts to maintain case file documents in electronic format and to accept filings from court practitioners via the Internet. The CM/ECF system is now in use in all of the federal appellate, district, and bankruptcy courts, the Court of International Trade, and the Court of Federal Claims. Nearly 43 million cases are on CM/ECF, and more than 600,000 attorneys and others have filed documents over the Internet.

Attorneys are able to file documents directly with any federal court over the Internet. There are no added fees for filing documents using CM/ECF. The CM/ECF system uses standard office computer hardware, an Internet connection and a browser, and accepts documents in portable document format (PDF). The system is easy to use – filers prepare a document using conventional word processing software, then save it as a PDF file. After logging onto the court's web site with a court-issued CM/ECF password, and acknowledging that the filing complies with the redaction rules, the filer enters basic information relating to the case and document being filed, attaches the document, and submits it to the court. A notice verifying court receipt of the filing is generated automatically and immediately. All electronically filing parties[1] in the case automatically receive immediate e-mail notification of the filing.

Work on the Next Generation of CM/ECF (Next Gen) is well underway. The project is currently transitioning from its first phase – requirements definition – to its second phase – design and development. As part of the requirements definition phase, the Judiciary gathered extensive information from stakeholders both inside and outside the court system. The NextGen project included an Additional Stakeholders Functional Requirements Group (ASFRG) that focused on how the federal courts interact with others in the legal system. The group's 24 members included representatives from the Judiciary, the Department of Justice, the American Bar Association, the Internal Revenue Service, the Association of American Law Schools, and the National Association of Bankruptcy Trustees.

The group reached out to more than 60 constituent groups in a variety of ways, such as focus group meetings, interviews, conferences, surveys, and elicitation sessions at the courts and the Administrative Office. In all, more than 7,000 individual stakeholders provided input, most of which focused on the same core requirements sought in NextGen.

---

[1] Those parties who are not electronic filers receive notification via U.S. mail.

These core requirements include single sign-on, enhanced search capabilities, batch-filing features, and customizable reports. Nearly 500 of the ASFRG's requirements have been adopted and incorporated into the functional requirements documents being used to design NextGen. The final report of the ASFRG is available to the public on www.uscourts.gov.

The first releases of the Next Generation of CM/ECF are expected in 2014 and 2015, and the requirements prioritized for those releases are associated with time-saving and/or cost-saving functionality. The Next Generation of CM/ECF will also enable additional improvements to the PACER service, including an updated user interface.

**Access to Court Records**
Registered PACER account holders can use a court's website or the PACER Case Locator to access court documents. The PACER Case Locator is a tool for locating court records that reside in U.S. district, bankruptcy, and appellate court CM/ECF databases across the country. Usage of the Case Locator continues to grow, with over 200,000 searches daily. Links to all courts and the PACER case locator are located at www.pacer.gov. Each court maintains its own CM/ECF database with case information. As a result, querying information from each court is comparable; however, the format and content from each court may differ slightly.

The Judiciary continues to seek to improve electronic public access to its records, and a number of initiatives have been put into place to broaden public access, including:

> *Public Access Terminals* – Every courthouse has public access terminals in the clerk's office to provide access to PACER[2] and other services, such as credit counseling.

> *Digital Audio* – At its March 2010 meeting, the Judicial Conference endorsed a proposal from the Committee on Court Administration and Case Management to allow judges, who use digital audio recording as the official means of taking the record, to provide, at their discretion, access to digital audio recordings of court proceedings via PACER. The digital audio initiative, also known as CourtSpeak, continues to be successful, both in terms of public and court interest. Presently, nineteen bankruptcy courts and two district courts have implemented digital audio, and an additional 23 bankruptcy courts, five district courts, and the Court of

---

[2] Viewing court records at a public access terminal is free. Printing copies of documents from a public access terminal is $0.10 per page.

A5

Federal Claims have begun implementation. The fee for an audio file is $2.40, regardless of the length of the recording.

*Training and Education Program* – In September 2010, the Judicial Conference approved a recommendation from the Committee on Court Administration and Case Management to establish a program involving the Government Printing Office (GPO), the American Association of Law Libraries (AALL), and the Administrative Office, that would provide training and education to the public about the PACER service, and would exempt from billing the first $50 of quarterly usage by a library participating in the program. The GPO and the AALL worked with the Administrative Office to develop three levels of training classes: training for trainers, training for library staff, and training for the public. There are currently 12 libraries participating in the program. In some instances, libraries are providing on-the-spot individual training. All training classes include instructions on *How to Create a PACER Account* and *How to Monitor PACER Usage*. Although some patrons expressed disappointment that they were not being allowed to use the library's PACER account, but instead had to use their own accounts, they did report being satisfied with the instructions provided. The AALL and the GPO continue to publicize the program to their communities.

*PACER Training Application* – The training site dcecf.psc.uscourts.gov enables the public to learn how to use PACER without registering or incurring any fees. In March 2012, the Administrative Office also launched video tutorials to assist the public in learning how to use PACER.

*RSS* – In addition to PACER access, which allows users to "pull" information from the courts, approximately 50 district courts and 80 bankruptcy courts are using a common, free internet tool, RSS, to "push" notification of docket activity to users who subscribe to their RSS feeds, much like a Congressional committee might notify its RSS subscribers of press releases, hearings, or markups.

*Pro Se Bankruptcy Pathfinder* – In August 2010, the CM/ECF Subcommittee of the Committee on Court Administration and Case Management approved a proposal to undertake a bankruptcy *pro se* pathfinder initiative, which is designed to assist *pro se* litigants in preparing the filings required at case opening, to reduce the time required to process *pro se* bankruptcy filings, to increase the quality of the data collected, and to employ new development tools today, which are selected for future federal Judiciary use. Three bankruptcy courts currently serve as beta courts: Central District of California, District of New Jersey, and District of New Mexico. It is anticipated that this software will be available for use by filers later this year.

*Opinion Initiative with the Government Printing Office* – In September 2012, the Judicial Conference of the United States approved national implementation of the program to provide access to court opinions via the Government Printing Office's Federal Digital System (FDSys) and agreed to encourage all courts, at the discretion of the chief judge, to participate in the program. Twenty-nine pilot courts are live, with over 600,000 individual court opinions available on FDSys. This has proved to be extremely popular with the public. Federal court opinions are one of the most utilized collections on FDsys, which includes the Federal Register and Congressional bills and reports. Access to FDSys is available free of charge via the Internet at www.gpo.gov. Registration is not required.

## PACER Users

PACER has a diverse user population, including: lawyers; *pro se* filers; government agencies; trustees; bulk collectors; researchers; educational institutions; commercial enterprises; financial institutions; the media; and the general public. The chart below is a breakdown of the PACER user population. The majority of "other" users are background investigators.



The largest user is the Department of Justice. Virtually all of the other high volume users are major commercial enterprises or financial institutions that collect massive amounts of data, typically for aggregation and resale.

-5-

A7

**Electronic Public Access Service Assessment**

A comprehensive assessment of PACER services was completed in May 2010.  The assessment provided insight into who uses PACER, areas that provide the highest level of satisfaction for those users, and areas that could be improved.  The initial assessment was also used to inform the work of the Additional Stakeholders Functional Requirements Group (ASFRG) as it began identifying requirements for  the Next Generation of CM/ECF.  An on-line satisfaction survey was made available to all 325,000 active PACER users in late 2009.  User types giving the highest overall satisfaction scores to PACER included creditors and service providers to the legal sector, followed by commercial businesses. Users in the legal sector and litigants—the two largest groups of PACER users—are also among the most satisfied.  Users at educational and research institutions gave the lowest overall satisfaction rating.  These are small groups of less-frequent users. The survey indicated that satisfaction rates climb steadily as frequency of use increases.

In addition to assessing satisfaction with the on-line component of PACER, users were asked to rate help-desk services provided by the PACER Service Center.  Satisfaction was very high; over 95 percent of respondents who contacted the center during the study period indicated they are "satisfied" or "very satisfied" overall.  However, about one-third of PACER users were not aware that the PACER Service Center is available to provide help with PACER.  The assessment also revealed that 75 percent of users were satisfied with the value for the money they paid for PACER access, 15 percent were neutral, and 10 percent were dissatisfied.

As a result of the assessment, a number of short- and mid-term activities were implemented to improve user satisfaction with electronic public access services.  These included:

- creating a new PACER Case Locator with expanded search capabilities to replace the U.S. Party/Case Index;
- redesigning the pacer.gov web page to include video tutorials;
- embarking on a program to provide public access to judicial opinions via the Government Printing Office's Internet-based FDSys Application;
- partnering with law libraries to provide training on the efficient and effective use of PACER;
- creating a free PACER training application, which is populated with actual court cases and case reports from the New York Western District Court;
- promoting the use of RSS feeds to "push" information to users;
- creating a mobile PACER application;
- redesigning the PACER bill and providing a tool to better manage billing for large organizations; and

-6-

- providing access to some audio recordings of judicial proceedings through PACER.

In April 2012, an initiative was undertaken to refresh the results from the initial assessment. This initiative is on track to meet its scheduled completion date of March 2013.

**Basis and History of Fees**

In 1988, the Judiciary sought funding through the appropriations process to provide electronic public access services. Rather than appropriate funds for this purpose, Congress specifically directed the Judiciary to fund electronic public access services through the collection of user fees. As a result, the electronic public access program relies exclusively on fee revenue. The statutory language specifically requires that the fees be used "to reimburse expenses incurred in providing these services."[3]

A study of policies and practices regarding use, release, and sale of data, recommended that the level of fees for a service should sustain the cost of the service. In 1991, a fee of $1.00 per minute for access to electronic information, via a dial-up bulletin board service, was set for the district and bankruptcy courts. Four years later, the fee was reduced to $0.75 per minute, and one year after that it was reduced to $0.60 per minute. The revenue generated from these fees was used exclusively to fund the full range of Electronic Public Access services, including PACER, the Appellate Bulletin Board system, the Voice Case Information System. The Voice Case Information System provided case information free of charge. Fee revenue also provided each court with hardware and software necessary to support public access services. This included more than 700 regular telephone lines, more than 200 toll-free telephone lines, and a personal computer for free public access at the front counter of all clerks' offices with 10 or more staff.

In 1997, the Judiciary addressed three issues pertaining to providing electronic public access to court information via the Internet. These issues were: (1) the establishment of an appropriate fee for Internet access to court electronic records; (2) the types of information for which a fee should be assessed; and (3) the technical approach by which PACER information should be provided over the Internet. An application of Internet technologies to the Judiciary's public access program was viewed as a way to make court and case information more widely available and to offer the opportunity to add additional information (local rules, court forms, court calendars and hours of operation) and services.

---

[3] Judiciary Appropriations Act, 1991, Pub. L. No. 101-515,Title IV, § 404, 104 Stat. 2102 and Judiciary Appropriations Act, 1992, Pub. L. No. 102-140, Title III, § 303, 105 Stat. 782.

-7-

The Judiciary's analysis focused on finding the fairest, most easily understood, and most consistent method for charging. In 1998, the Judicial Conference adopted a per-page fee, as it was determined to be the simplest and most effective method for charging for public access via the Internet. The $0.07 per page electronic access fee[4] was calculated to produce comparable fees for large users in both the Internet and dial-up applications and thus maintain the then current public access revenue level while introducing new technologies to expand public accessibility to the PACER information. For infrequent PACER users, costs were reduced considerably by using the Internet.

In 2003, in the Congressional conference report that accompanied the Judiciary's FY 2004 appropriations act, Congress expanded the permitted uses of EPA funds to include Case Management/Electronic Case Files (CM/ECF) system costs. In order to provide sufficient revenue to fully fund currently identified CM/ECF system costs, in September 2004, the Judicial Conference approved an increase in the electronic public access fee from $0.07 to $0.08 per page, effective January 1, 2005.

Based on a recommendation from the Committee on Court Administration and Case Management, in September 2011, the Judicial Conference approved an increase in the fee from $0.08 to $0.10 per page, effective April 1, 2012, in order to give users adequate notice. The Committee noted that the fee had not been increased since 2005 and that, for the previous three fiscal years, the public access program's obligations had exceeded its revenue. The fee increase is being used to fund the Next Generation of CM/ECF and PACER. The Committee also recommended that the waiver of fees of $10 or less in a quarterly billing cycle be changed to $15 or less per quarter, so that approximately 75 percent of users would still receive fee waivers. Finally, in recognition of the current fiscal austerity for government agencies, the Committee recommended that the fee increase be suspended for local, state, and federal government entities for a period of three years. The Conference adopted all of the Committee's recommendations.

The Judiciary takes its responsibility to set the EPA fee very seriously. Since well before the E-Government Act, it has been the Judicial Conference's policy to set the electronic

_____

[4]The per-page charge applies to the number of pages that result from any search, including a search that yields no matches (one page for no matches). In the current PACER systems, billable pages are calculated in one of two ways: a formula is used to determine the number of pages for an HTML formatted report. Any information extracted from the CM/ECF database, such as the data used to create a docket sheet, is billed using a formula based on the number of bytes extracted (4320 Bytes). For a PDF document, the actual number of pages is counted to determine the number of billable pages.

public access fee to be commensurate with the costs of providing and enhancing services related to public access.  Before the one-cent-per-page increase in 2004, the Conference had a history of lowering the fee, and Congressional appropriations to the Judiciary have never provided funding for the public access program.  In 2001, the Judicial Conference established a fee of $0.10 per page to print copies of documents from public access terminals in the clerks' office.  That fee has never been raised.  A fee is not charged to view PACER documents from the public access terminals in federal courthouses.  Finally, the per page fee has been capped at the charge for 30 pages (or $3.00) for documents, docket sheets, and case-specific reports.[5]

**Free Information and Exemptions**

There is a high cost to providing electronic public access, and as described above, Congress decided in 1991 that the funds needed to improve electronic access to court information were to be provided by the users of this information through reasonable fees rather than by all tax payers through appropriated funds.  It is also important to note, however, that the public access program does provide a great deal of federal court information to the American public for no charge.  For example:

- The Judiciary does not charge for access to judicial opinions;

- Parties to a court case receive a copy of filings in the case at no charge;

- The $0.10 per page fee is not charged for viewing case information or documents on PACER at the public access terminals in the courthouses;

- If an individual account does not reach $15 quarterly, no fee is charged at all; and in a given fiscal year, approximately 65-to-75 percent of active users have fee waivers for at least one quarter.  Most of these users are litigants and their attorneys who are involved in a specific case;

- Consistent with Judicial Conference policy, courts may grant exemptions for payment of electronic public access fees.  Approximately 20 percent of all PACER usage is performed by users who are exempt from any charge – including indigents, case trustees, academic researchers, CJA attorneys, and *pro bono* attorneys.

---

[5]The 30 page fee cap does not apply to non case-specific reports such as docket activity reports that include multiple cases and reports from the PACER Case Locator.

A11

The vast majority (95 percent) of PACER accounts incur less than $500 in fees – or no fee at all – over the course of the year.  This is a long-established pattern.  Additionally, the public access program also provides free access to court case information through VCIS (Voice Case Information System), an automated voice response system that provides a limited amount of bankruptcy case information directly from the court's database in response to telephone inquiries.

**Benefits of a Fee**
In order to maintain the level of service presently provided through the public access program, the Judiciary would need appropriated funds to replace the fee revenue, and in this fiscal climate increased appropriations are not available.  Fee revenue allows the Judiciary to pursue new technologies for providing public access, develop prototype programs to test the feasibility of new public access technologies, and develop enhancements to existing systems.  By authorizing the fee, Congress has provided the Judiciary with revenue that is dedicated solely to promoting and enhancing public access.  These fees are only used for public access, and are not subject to being redirected for other purposes.  The fee, even a nominal fee, also provides a user with a tangible, financial incentive to use the system judiciously and efficiently, and in the absence of a fee the system can be abused.

**Privacy**
The Judiciary is committed to protecting private information in court filings from public access.  It has been over a decade since the Judicial Conference began consideration of – and subsequently formulated – a privacy policy for electronic case files, and over four years since the enactment of Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure requiring that certain personal data identifiers not be included in court filings.  These policies and rules have been integral to the success of the Judiciary's electronic public access program.  Adherence to these policies and rules by litigants and attorneys is essential to ensure that personal identifier information is appropriately redacted from court filings.  The Judicial Conference examined how the privacy rules were working in practice and found that overall the Judiciary's implementation of the privacy rules has been a tremendous success.

In 2001, the Judicial Conference adopted a policy on privacy and public access to electronic case files that allowed Internet-based access to civil and bankruptcy case filings; the policy required filers, however, to redact certain personal information (i.e., Social Security numbers, financial account numbers, names of minor children, and dates of birth).  Following a pilot program and a Federal Judicial Center study on criminal case files, the Conference approved electronic access to criminal case files, with similar redaction requirements.  The redaction requirements of the Conference's privacy policy were largely incorporated into the Federal Rules, effective December 1, 2007.

-10-

As noted above, a key tenet of these rules (as well as the precursor Conference policy) is that the redaction of personal identifiers lies with the filing party.  The Advisory Committee Note accompanying Federal Rule of Civil Procedure 5.2 states: "The clerk is not required to review documents filed with the court for compliance with this rule.  The responsibility to redact filings rests with counsel and the party or non-party making the filing."  Nonetheless, the Judicial Conference and the Administrative Office are obviously interested in ensuring that these privacy rules are adequate and appropriately followed.  To this end, two Judicial Conference Committees – the Court Administration and Case Management Committee, and the Committee on Rules of Practice & Procedure – have worked jointly with the Federal Judicial Center to monitor and study the operation of the privacy rules and related policies and to address new issues that have arisen since their implementation.  In addition, the Administrative Office took a number of steps to ensure that the privacy protections established in the federal rules can be more easily followed, including the establishment of a task force that developed a notice for the current CM/ECF system reminding litigants of their obligation under the law to redact personal identifier information and to require filers to affirm that they must comply with the redaction rules.

The Administrative Office continues to encourage courts to stress the rules' redaction requirements with those who file in the court.  Options for informing the filers include various, readily available communications vehicles, such as the court's public website, newsletters, listserves, and Continuing Legal Education programs.  Further, Judicial Conference Committees and the Administrative Office have asked individual courts to share information on actions they have taken to ensure compliance with the privacy rules, including promulgation of local rules or standing orders, modifications to local CM/ECF applications, and outreach efforts to the public and bar informing them of the redaction requirements.  This type of information will assist the Administrative Office, as well as the Conference Committees, to be better informed of the scope of any non-compliance.  Thus far, the Administrative Office has received an impressive response from the courts, which are addressing the privacy rules in a variety of ways, ranging from conducting education and awareness campaigns to issuing judicial orders to redact noncompliant filings.

**E-Government Act Compliance**

It is important to emphasize the effort and seriousness with which the Judiciary has implemented the E-Government Act's requirements.  Section 205(d) of the Act directed the Judicial Conference to "explore the feasibility of technology to post online dockets with links allowing all filings, decisions and rulings in each case to be obtained from the docket sheet of the case."  The Judiciary has gone much further than "exploring" such a system.  It designed and has now implemented that system in all courts, providing more than 1.4 million PACER users with access to over 500 million case file documents at a

-11-

reasonable fee – and, frequently, free of any charge at all. The EPA program was developed as an alternative to going to the courthouse during business hours and making copies at the cost of $0.50 per page. This service saves litigants/lawyers and the public time and money by allowing them to file from any computer and also to download and review case information electronically, with all the attendant benefits.

Very few state courts have electronic access systems, and none provides as much information as PACER. Many state courts charge several dollars for a single records search. No other court system in the world provides as much information to as many people in as efficient a manner. State court officials and court administrators from other countries contact the federal Judiciary frequently about our electronic public access model.