**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE: APPLICATION FOR EXEMPTION FROM ELECTRONIC PUBLIC ACCESS FEES BY JENNIFER GOLLAN AND SHANE SHIFFLETT, | No. 12-16373<br><br>D.C. No. 3:12-mc-80113-JW |
| JENNIFER GOLLAN; SHANE SHIFFLETT, *Applicants-Appellants*. | OPINION |

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
June 10, 2013—San Francisco, California

Filed August 29, 2013

Before: Diarmuid F. O'Scannlain and Andrew D. Hurwitz, Circuit Judges, and Lawrence L. Piersol, Senior District Judge.*

Opinion by Judge O'Scannlain;
Concurrence by Judge O'Scannlain

* The Honorable Lawrence L. Piersol, Senior United States District Judge for the District of South Dakota, sitting by designation.

## SUMMARY[**]


### Appellate Jurisdiction

The panel dismissed for lack of jurisdiction an appeal from the district court's order denying an ex parte application for an exemption from the fees associated with electronic access to court records.

As authorized by Congress, the fee protocol for users of the Public Access to Court Electronic Records system was set by the Judicial Conference of the United States, in cooperation with the Administrative Office of the Courts. The PACER fee waiver was sought by two journalists who were employed by a not-for-profit organization and wished to conduct a research project.

The panel held that it did not have jurisdiction under 28 U.S.C. § 1291 to review the district court's order because the order was an administrative order outside the scope of the court's litigative function, rather than a "decision" of the district court. Distinguishing an unpublished decision of the Third Circuit and *United States v. Poland* (*In re Derickson*), 640 F.2d 946 (9th Cir. 1981) (per curiam), the panel held that the order was administrative because it arose from a non-adversarial proceeding, and the application for a fee exemption was wholly unconnected to pending litigation.

Concurring specially, Judge O'Scannlain wrote that, assuming ordinary PACER-fee determinations are not


[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

reviewable by the judiciary's administrative apparatus, including the Judicial Conference and the Judicial Council of the Circuit, it will be up to Congress to decide whether to fashion an appellate-review mechanism, or whether to leave the fee determinations within the exclusive purview of district courts.

---

## COUNSEL

Rochelle L. Wilcox, Davis Wright Tremaine LLP, San Francisco, CA, argued the cause and filed the briefs for the applicants-appellants. With her on the briefs was Thomas R. Burke, Davis Wright Tremaine LLP, San Francisco, CA.

H. Thomas Byron III, United States Department of Justice, Civil Appellate Division, Washington, DC, argued the cause and filed the brief for the Administrative Office of the United States Courts as amicus curiae. With him on the brief were Stuart F. Delery, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, DC, Melinda L. Haag, United States Attorney for the Northern District of California, Matthew M. Collette, Attorney, United States Department of Justice, Civil Appellate Division, Washington, DC, Robert K. Loesche, General Counsel, Administrative Office of United States Courts, Washington, DC, and Sigmund Adams, Attorney, Administrative Office of United States Courts, Washington, DC.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must consider our power to review a district court's administrative order denying an exemption from the fees associated with electronic access to court records.

I

A

With the Public Access to Court Electronic Records ("PACER") system users can view and print case filings, judicial opinions, and other docket information from the federal trial, bankruptcy, and appellate courts. Congress has authorized the Judicial Conference of the United States[1] to raise funds to support PACER by setting appropriate user fees. In order to ensure the fees do not impair public access to the courts, Congress directed the Judicial Conference to "provide for exempting persons or classes of persons" for whom fees would be an unreasonable burden. Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, Pub. L. No. 102-140, Title III § 303, 105 Stat. 782 (1992).

In cooperation with the Administrative Office of the Courts, the Judicial Conference has devised a fee protocol for PACER. Anyone may use the terminals in the nation's federal courthouses to view court documents at no charge. However, non-litigants who want access to documents

[1] This is the body of circuit and district judges chaired by the Chief Justice of the United States. *See* 28 U.S.C. § 331.

remotely, using the Internet, are subject to a fee of ten cents per page. But in accord with Congress's directive about exemptions, the 2012 PACER fee schedule called on district courts to consider exempting, "indigents, bankruptcy case trustees, individual researchers associated with education institutions, courts, section 501(c)(3) not-for-profit organizations, court appointed pro bono attorneys, and pro bono ADR neutrals from payment of these fees." Electronic Public Access Fee Schedule of April 1, 2012. The Judicial Conference also annotates the fee schedule with policy notes designed to help courts apply its terms. According to its 2012 policy notes, "[c]ourts should not exempt local, state or federal government agencies, members of the media, attorneys or others not members of one of the groups listed" in the fee schedule.

B

Jennifer Gollan and Shane Shifflett are journalists with the Center for Investigative Reporting ("CIR"), a section 501(c)(3) not-for-profit organization that reports on "contemporary social, political, and economic issues" across traditional and new media. In March 2012, Gollan and Shifflett applied in the district court for a four-month exemption from the per page PACER fee. At the time, they were employees of The Bay Citizen—another 501(c)(3) organization involved in journalism. Gollan and Shifflett wanted to comb court filings in order to analyze "the effectiveness of the court's conflict-checking software and hardware to help federal judges identify situations requiring their recusal." They planned to publish their findings on The Bay Citizen's website.

After analyzing the terms of the April 1, 2012 Judicial Conference Fee Schedule, the district judge issued an order granting the exemption. He did so because he credited that their statistical project would be prohibitively expensive for Gollan and Shifflett's not-for-profit employer—at a cost of "many thousands of dollars." About a week later, the judge ordered them to show cause why their exemption from PACER fees "should not be revoked on the ground that they are members of the media."

At an April 30 hearing, Gollan and Shifflett informed the court that The Bay Citizen had merged into the CIR. The judge explained that although the fee schedule gave him the discretion to exempt 501(c)(3) groups, he interpreted the accompanying policy notes as directing him not to exempt members of the media. Thus, even presuming their research project would impose the same financial hardship on the CIR as The Bay Citizen, CIR's status as "501(c)(3) *Media*" meant that it likely was not qualified for the exemption. Rather than definitively ruling at the hearing, however, the judge invited Gollan and Shifflett to submit a renewed application. In it, they argued that when (1) parsed carefully, and (2) read in tandem with the exemption language, the policy notes did allow exemptions for media members who worked for a 501(c)(3) organization. The judge denied the new application in a May 16, 2012 order, stating that he would not adopt Gollan and Shifflett's interpretation in the absence of authority supporting it. They filed a timely notice of appeal seeking review of the denial of their application for exemption.

Because Gollan and Shifflett are challenging an order arising out of an ex parte application, we asked the Administrative Office to appear as amicus to address (1)

whether we have appellate jurisdiction, and (2) "whether the Judicial Conference Policy does in fact prohibit exemptions for media even when they are employed by a non-profit organization."[2]

## II

The Administrative Office argues we lack jurisdiction because the denial of the PACER fee waiver is not an appealable order. The question of appellate jurisdiction "must always be resolved before the merits of an appeal are examined or addressed." *Williamson v. UNUM Life Ins. Co. of Am.*, 160 F.3d 1247, 1250 (9th Cir. 1998); *see also Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1130–31 (9th Cir. 2012) (analyzing appellate jurisdiction before determining whether the district court had subject matter jurisdiction).

Our court's authority, indeed, its very existence is pursuant to legislation enacted by Congress. *See* U.S. Const. art. III, § 1; *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) ("Congress has the constitutional authority to define the jurisdiction of the lower federal courts, and, once the lines are drawn, 'limits upon federal jurisdiction . . . must be neither disregarded nor evaded.'" (alteration in original)). Thus, "in every case, jurisdiction must exist by way of some affirmative source." *Williamson*, 160 F.3d at 1250.

[2] We also asked the Administrative Office whether we should construe the notice of appeal as a request for a writ of mandamus. *See* 28 U.S.C. § 1651(a). However, Gollan and Shifflett have not asked us to exercise jurisdiction on that basis. We thus express no view about that possibility.

A

Like most parties who appear before us, Gollan and Shifflett identify 28 U.S.C. § 1291 as the source of our appellate authority. It provides that

> [t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

Gollan and Shifflett argue that when the judge denied their PACER exemption he made a "decision," that decision was "final," and thus it neatly fits within section 1291's terms. Finality is not at issue here because the matter of Gollan and Shifflett's eligibility for a fee waiver was not "open, unfinished, or inconclusive." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

Instead, the dispute in this appeal is whether the order insisting that Gollan and Shifflett pay PACER fees ranks "as a 'decision' of the district court within the meaning of 28 U.S.C. § 1291." *United States v. Walton* (*In re Baker*), 693 F.2d 925, 926 (9th Cir. 1982). "Decision" is a term that could embrace countless acts by district courts. They make decisions pertaining to "personnel, facilities, equipment, supplies, budgeting, accounting, security, rulemaking and public relations." *Rini v. Clerk, United States Bankr. Court* (*In re Rini*), 782 F.2d 603, 606 (6th Cir. 1986). They "appoint clerks and bailiffs, order supplies, write and

promulgate rules, and so on." *Brooks v. Laws*, 208 F.2d 18, 29 (D.C. Cir. 1953). Yet in order fairly to interpret section 1291, we must consider more than "the bare meaning of the word" decision. *Bailey v. United States*, 516 U.S. 137, 145 (1995). We must also analyze "its placement and purpose in the statutory scheme." *Id.*; *see also King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("Words are not pebbles in alien juxtaposition; [instead] they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used. . . .").

There are two, interrelated, clues about 1291's meaning: one constitutional and one rooted in the statute's history. To start, it stands to reason that Congress wanted the definition of our jurisdiction to be construed in the context of the usual work of courts, which is the adjudication of "cases" and "controversies." U.S. Const. art. III., § 2; *cf. United States v. Bailey*, 444 U.S. 394, 415 n.11 (1980) (reasoning, in a similar vein, that Congress "legislates against a background of Anglo-Saxon common law"). These two constitutional words—the Supreme Court has explained—"confine 'the business of federal courts to questions presented in an *adversary context* and in a form historically viewed as capable of resolution through the *judicial process*.'" *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) (emphasis added) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)); *see also Bense v. Starling*, 719 F.2d 241, 244 (7th Cir. 1983) ("It is essential . . . to the existence of federal judicial power that

there be present before the court a proceeding and that such proceeding be an adversary one.").[3]

The amendment history of section 1291 further illuminates its meaning. *See Bailey*, 516 U.S. at 507. Its predecessor section provided that

> [t]he circuit courts of appeal shall have appellate jurisdiction to review by appeal final decisions—
>
> First. In the district courts, *in all cases* save where a direct review of the decision may be had in the Supreme Court under section 345 of this title.
>
> Second. In the United States District Courts for Hawaii and for Puerto Rico, *in all cases.*
>
> Third. In the District Court for the District of Alaska, or any division thereof, and in the District of the Virgin Islands, *in all*

[3] The Supreme Court recently decided that there was "adequate Art. III adverseness" even though one party "largely agree[d] with the opposing party on the merits of the controversy." *United States v. Windsor*, 133 S. Ct. 2675, 2686 (2013). While *Windsor* arguably refined the definition of *adverseness* in circumstances said to be "unusual and urgent," presumably a more fulsome definition would apply in a typical case. *Id.* at 2688. In any event, nothing in *Windsor* suggests that it is no longer accurate to consider "judicial business" as litigation pursued by counterparties. *See id.* at 2684 ("[W]hen this case was in the District Court it presented a concrete disagreement between opposing parties, a dispute suitable for judicial resolution.").

Case: 12-16373 08/29/2013 ID: 8761215 DktEntry: 43-1 Page: 11 of 19



> *cases*; and in the United States District Court for the District of the Canal Zone in the cases and modes prescribed in sections 61 and 62, Title 7, Canal Zone Code (48 Stat. 1122).
>
> Fourth. In the Supreme Courts of the Territory of Hawaii and of Puerto Rico, *in all cases*, civil or criminal . . . .
>
> Fifth. In the United States Court of China, *in all cases.*

28 U.S.C. § 225(a) (1940) (emphasis added). In 1948, Congress recast section 225(a) as what is now section 1291 during a re-codification of the country's Judicial Code. That project was undertaken because the array of legislative enactments concerning courts had not been systematized since 1911. *See* William W. Barron, *The Judicial Code: 1948 Revision*, 8 F.R.D. 439, 440–41 (1948) (cited in *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136 (2008)). Because the project's goal was simply "to state in clear and simpler terms the original meaning of the statute revised," Barron, *supra* at 446, we must not "presume that the 1948 revision worked a change in the underlying substantive law unless an intent to make such a change is clearly expressed." *John R. Sand & Gravel Co.*, 552 U.S. at 136 (internal quotation marks omitted).

With the enactment of section 1291, the references to "cases" in each of section 225's original five paragraphs were eliminated. Although the omission of this word, which facially "seems to bear upon the courts of appeals' power to review administrative actions of district courts," is not specifically explained in the drafting history there is also no

language suggesting a substantive change was intended. *In re Rini*, 782 F.2d at 606. Quite the opposite in fact. The Reviser's Notes make clear that the new section 1291 merely "rephrase[d] and simplifie[d] paragraphs 'First,' 'Second,' and 'Third' [*et cetera*] of section 225(a)" that "referred to each Territory and Possession separately." H.R. Rep. No. 80-308, A109 (1947). "Statements made by several of the persons having importantly to do with the 1948 revision" as well as the "reports of the Committee on the Judiciary of the Senate, and of the House" explain that "every change made in the text is explained in detail in the Reviser['s] Notes." *Fourco Glass Co. v. Tansmirra Prods. Corp.*, 353 U.S. 222, 226–27 (1957).[4] It is therefore appropriate to interpret section 1291 as though it still makes explicit reference to "final decisions . . . *in all cases*." 28 U.S.C. § 225 (1940) (emphasis added); *cf. Keene*, 508 U.S. at 209 (declining "to see significance in the deletion of [certain] language . . . in the comprehensive revision of the Judicial Code completed in 1948" from the provision on the Court of Federal Claims's jurisdiction).

On the basis of its statutory and constitutional moorings, we hold that section 1291 "necessarily refers to final decisions *of a judicial character*, not to administrative actions . . . outside the scope of the litigative function." *In re Baker*, 693 F.2d at 927; *see also Brooks*, 208 F.2d at 29 (explaining that "if every act performed by virtue of judicial power were deemed a 'decision' [under section 1291], there would be no

[4] The Supreme Court has regularly consulted the legislative history of section 1291 and the Reviser's Notes. *See, e.g.*, *John R. Sand & Gravel Co.*, 552 U.S. at 136 (using both the House Report and Barron's article); *Keene*, 508 U.S. at 209 (relying on the fact that "the Reviser's Note to § 1500 indicates nothing more than a change 'in phraseology'").

meaning to the restrictive intention in the section of the statute with which we are dealing.").

B

1

Although distinguishing a "*judicial* decision" from an "an administrative or ministerial order from which appeal is not available" is not always simple, two characteristics of the order denying Gollan and Shifflett's fee waiver put it squarely on the administrative side of the line. *United States v. Ray*, 375 F.3d 980, 986 n.7 (9th Cir. 2004). First, it arises from a non-adversarial proceeding. *See Massachusetts*, 549 U.S. at 516. There was no party to oppose their request below, and we have no appellee before us. *See In re Carlyle*, 644 F.3d 694 (8th Cir. 2011) (Riley, J., in chambers) (concluding that "the non-adversarial nature of the [Criminal Justice Act] voucher process, which is wholly *ex parte*, evidences an administrative act not a judicial decision."). Second, and what makes this appeal easy to resolve, is that the application for exemption is wholly unconnected to pending litigation. *See In re Long*, 475 F.3d 880 (7th Cir. 2007) ("The order excluding Long from the library is an administrative rather than a judicial order. No proceeding has been instituted against Long. . . . Such an action is not judicial; rather it is the kind of action that the person against whom it was taken might seek judicial redress for."); *Bense v. Starling*, 719 F.2d 241, 244 (7th Cir. 1983) (no appeal from rejection of *pro hac vice* application because without the filing of a complaint under Federal Rule of Civil Procedure 3 there was no "case" or true "'parties' before the Court"). Gollan and Shifflett have not filed a civil action, nor do they

Case: 12-16373 08/29/2013 ID: 8761215 DktEntry: 43-1 Page: 14 of 19



seek free PACER access in the service of some third party's litigation.

One of Gollan and Shifflett's contentions on appeal is that if the fee schedule does require courts categorically to exclude media members from fee waivers, it is an unconstitutional discrimination against the press. *See Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582–83 (1983) (explaining that the First Amendment prohibits certain regulations that single out the media for "differential treatment"). If they initiate a civil action seeking to enjoin the fee schedule and policy notes under the Constitution, then that may well lead to a decision that we have the power to review. *See, e.g.*, *Russell v. Hug*, 275 F.3d 812, 819–23 (9th Cir. 2002) (entertaining an appeal from a judgment dismissing a complaint alleging a Criminal Justice Act Plan for the Northern District of California violated the Constitution, while declining to review the substance of the plan because our power "to review final judgments of the district courts, conferred by 28 U.S.C. § 1291, does not authorize us to engage in supervisory oversight of administrative actions of the district courts").[5]

---

[5] The official position of the Administrative Office is that the April 2012 policy "notes identifying those generally ill-suited to an exemption [are] neither exclusive nor categorical." But, it acknowledges that the policy was confusing and in need of revision. That clarification occurred in April 2013, while this appeal was pending. According to the Administrative Office, Gollan and Shifflett should now be able to qualify for a PACER exception under the 2013 fee schedule and policy notes provided they document financial hardship. As explained to us by the Administrative Office, a judge need not exempt a 501(c)(3) group under the new policy notes, although he should consider doing so since most not-for-profits have limited budgets. By the same token, a judge should approach an application for exemption filed by "members of the media" with caution, since media organizations typically will "have the ability to pay the fee."

However, because the order denying Gollan and Shifflett a PACER fee exemption comes to us today strictly in an administrative context we may not review it under section 1291.

2

We recognize that one of our sister circuits allowed an appeal from the denial of PACER fees. *See Zied-Campbell v. Richman*, 317 F. App'x 247 (3d. Cir. 2009) (unpublished per curiam). That appeal, however, was taken by a civil plaintiff who had named the Secretary of the Pennsylvania Department of Welfare as a defendant in a lawsuit. *See id.* at 248. As opposed to Gollan and Shifflett who seek to conduct research unconnected to a case, Zied-Campbell wanted to use PACER as a substitute for Westlaw (a commercial legal research application) so she could retrieve legal authorities relevant to her pending litigation. *Id.* at 249.

Pointing to an authority from our circuit, Gollan and Shifflett also claim that they may appeal on the basis of *United States v. Poland* (*In re Derickson*), 640 F.2d 946 (9th Cir. 1981) (per curiam). The appellant was an attorney appointed under the Criminal Justice Act ("CJA") "to represent defendant Michael Kent Poland, who was charged with murder and bank robbery." *Id.* at 947. The attorney had represented Poland at a four-week jury trial, and fifteen

---

Electronic Public Access Fee Schedule of April 1, 2013 (reprinted at 28 U.S.C. § 1914 (West. 2013)).

The Administrative Office has no objection to Gollan and Shifflett's reapplying in the district courts now that the fee schedule and policy notes have been revised.

months after his client's conviction sought payment for services rendered. *Id.* Because it came after a forty-five-day period for submitting a CJA voucher, the judge concluded that he was "compelled not to recommend any payment on the application submitted[,] on the sole ground that (the court) lack(ed) jurisdiction." *Id.* at 949. We held that the attorney could appeal such denial, because it fell "within that 'small class (of claims) which finally determine claims of right (too important to be denied review, and) separable from, and collateral to, rights asserted in the (underlying) action." *Id.* at 948 (quoting *Cohen*, 337 U.S. at 546). The fact that there is no underlying action here makes *In re Derickson* distinguishable for the same reason as *Zied-Campbell*.

There are two other critical reasons why *In re Derickson* is not the ticket to appellate jurisdiction that Gollan and Shifflett hope to obtain. First, as later cases have noted, *In re Derickson* was unique in that the lawyer sought to appeal from a "district court's decision that it lacked *jurisdiction* under the CJA to award fees *at all*." *United States v. Ray*, 375 F.3d 980, 986 n.7 (9th Cir. 2004) (emphasis added); *see also United States v. French*, 556 F.3d 1091, 1094–95 (10th Cir. 2009) (identifying the jurisdictional limit as *Derickson*'s key feature). By contrast, the judge did not articulate any jurisdictional limit on his power to entertain an application for exemption such as Gollan and Shifflett's; rather he simply interpreted the fee schedule in a fashion that would have excluded them. Second, *Derickson* does not analyze the principle at the heart of today's appeal—the notion that section 1291 only embraces decisions of a judicial, as

opposed to administrative, character. *See In re Derickson*, 640 F.2d at 947–48.[6]

III

For the foregoing reasons, Gollan and Shifflett's appeal is **DISMISSED** for lack of appellate jurisdiction.[7]

---

O'SCANNLAIN, Circuit Judge, concurring specially:

I write individually to acknowledge "the elephant in the room": to whom does one go for review when an application for an exemption from PACER fees has been denied?

---

[6] Gollan and Shifflett expansively read *In re Derickson*. In their view, it paves the way for appellate jurisdiction over all challenges to "a district court's *construction* or *interpretation* of a rule or law committed to the district court to administer." We decline to draw a broadly applicable maxim from the case considering that its legal analysis strictly explored what "finality" means under 1291. *In re Derickson*, 640 F.2d at 947–48. The following year, when we decided that the *amount* of a CJA voucher was a non-appealable determination, we looked (as we have in this appeal) to the contours of the term "decision." *See In re Baker*, 693 F.2d at 926–27 ("Our jurisdiction to entertain the present appeal must therefore arise, if at all, from 28 U.S.C. § 1291, which grants us jurisdiction over appeals 'from all final decisions of the district courts.' Baker contends that the district court's certification is 'final' within the meaning of *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 546 (1949). We agree that the district court's order is 'final' with regard to Baker's fees, but we cannot regard it as a 'decision' of the district court within the meaning of 28 U.S.C. § 1291.").

[7] Gollan and Shifflet's July 10, 2013 Motion to Supplement the Record is **GRANTED.**

We posed just this question to the Administrative Office at oral argument. Since the Judicial Conference is the body Congress tasked with writing the fee schedule, naturally, the Administrative Office suggested that comments about either the clarity or substantive coverage of the policy could be directed there. By statute, the Judicial Conference studies "the condition of business in the courts of the United States" and makes recommendations "to the various courts to promote uniformity of management procedures and the expeditious conduct of court business." 28 U.S.C. § 331. Reviewing individual applications for exemption such as Gollan and Shifflett's, however, would not be—as the Administrative Office recognized—consistent with this broad national mission.

PACER fee determinations are just one of the "increasing numbers of administrative responsibilities" being assigned to district courts "that are not subject to review by appeal." 15A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3903 (2d. ed. 1992). The authors of a leading treatise on federal procedure argue that perhaps "control may be exercised by the Judicial Council of the Circuit." Wright & Miller, *supra*, at § 3903. Comprised of district and circuit judges, but not vested with "traditional judicial powers," the Circuit Council has been described as a "'board of directors' for the circuit." *Chandler v. Judicial Council of the Tenth Circuit of the United States*, 398 U.S. 74, 86 n.7 (1970); *see also* 28 U.S.C. § 332. Outside of the realm of judicial-misconduct allegations,[1] the Judicial

[1] For a synopsis of that aspect of the Judicial Councils' work, see J. Clifford Wallace, *Resolving Judicial Corruption While Preserving Judicial Independence: Comparative Perspectives*, 28 Cal. W. Int'l L.J.341, 348–51 (1998).

Councils typically "avoid involvement with any matter specific to the decision of an individual case." Wright & Miller, *supra*, at § 3939. Under extraordinary circumstances not present here, *i.e.* a district court interpreting the fee schedule in bad-faith, the Administrative Office thought it was conceivable that those circuit bodies might appropriately deal with a PACER fee dispute. *Cf.* J. Clifford Wallace, *Report of the Committee on Reorganization of the Circuit Conference and Conference Committees*, 68 F.R.D. 469, 474 (1975) (explaining that each "circuit council has supervisory powers which are not clearly defined but do exist"). However, for more quotidian PACER applications the judicial councils would not be the place to turn.

Because (as the opinion discusses) there is "no right of formal appeal" to contest the amount of a Criminal Justice Act fee award, Congress decided to create an administrative "review process separate from the traditional right of appeal." *In re Smith*, 586 F.3d 1169, 1173 (9th Cir. 2009) (explaining that "excess fees must be approved both by the presiding judge and the chief circuit judge or his delegate").

Assuming ordinary PACER-fee determinations are not reviewable by the judiciary's administrative apparatus, it will be up to Congress to decide whether to fashion an appellate-review mechanism, or whether to leave them within the exclusive purview of district courts.